**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

MAY 2 6 2017

LAWRENCE K. BAERMAN, CLERK
ALBANY

———————————————————

Frances Amato, John Doe (progeny minor child), Adrienne Auchmoody, Toni Jean Kulpinski, Vladimir Kulpinski, Michaela Kulpinski, Michelle Arzola, Jane Doe (minor child), John Doe (minor child) of Michelle Arzola                                   Plaintiff's,

      -against-

Judge Anthony McGinty, individually

and as Ulster County Family Court Judge;

Attorney Andrew Gilday, individually; and as a Public defender
of New York; Amy Ingram, state Attorney for
the Child; and Patrick V. Beesmer individually and Pamela Augustine, individually

**VERIFIED**
**COMPLAINT**

Case No. 1: 17-cv-593
(MAD/ATB)

**Jury Trial Demanded**

Defendants.

———————————————————

This is a Civil Rights Complaint for declaratory, injunctive and other appropriate relief brought forth by Plaintiff's against the above-named defendants, sets forth the

following:

### Parties

1) Plaintiff, Frances Amato, is a citizen of the United States and resident of the state of New York with a home located Marlboro, New York. As relevant to this case, she is a parent of C'   , B'   r child and makes her living as Advocate & Whistle blower and community educator, founder of National Coalition for family court & cps reform. All family members listed victimized by Ulster County Defendants.

2) Plaintiff, John Doe is minor child and progeny is this custody case, a citizen of the United States and resident of the state of New York who always resided with above Plaintiff and mother Frances Amato located in Marlboro, New York, until stolen by above Defendant Anthony McGinty as relevant to this case, he is the child of Frances Amato and a 4th grade

student robbed of his education, health, emotional care and currently resides with abusive father in Kingston New York, He has been victimized by Ulster County Defendants. He is emotionally, physically and sexually abused. All evidence will be included in discovery

3) Plaintiff, Adrienne Auchmoody, is a citizen of the United States and resident of the state of New York with a home in Marlboro, New York. As relevant to this case, she is maternal grandmother of C     1 E        and is retired from Saint Francis Hospital and Newburgh-Cornwall Hospital. She has been victimized by Ulster County Defendants.

4) Plaintiff, ToniJean Kulpinski, is a citizen of the United States and resident of the state of New York with a home in New Windsor, New York as relevant to this case, she is the Aunt and God mother of C      B     r and is a Holistic Practitioner with her own practice as well as being contracted to Mount Saint Mary College teaching Adult education for over 7 years. She has been victimized by Ulster County Defendants.

5) Plaintiff, Vladimir Kulpinski, is a citizen of the United States and a resident of the state of New York with a home in New Windsor, New York as relevant to this case, he is the Uncle and Godfather of C      B     and is employed by the Marlboro school district as well as his own photography company. He has been victimized by Ulster County Defendants.

6) Plaintiff, Michaela Kulpinski, is a citizen of the United States and a resident of the state of New York with a home in New Windsor, New York as relevant to this case, she is the cousin of C      B     and is a full time honor student and beginning college in the fall. She has been victimized by Ulster County Defendants.

7) Plaintiff's Michelle Arzola, Jane Doe, John Doe are citizens of the United States and residents of the State of Ohio with their husband and father with a home in Ohio as relevant to

this case they are the sister and niece and nephew of C        B        . Michelle is the owner and operator of Michelles private day care and they are victimized by the Ulster County Defendants

8)    On information and belief, Defendant Judge Anthony McGinty is a resident of New York State with a home located in Ulster County. As relevant to this action, he was and still is a state family court Judge assigned to a custody case entitled CUSTODY, index number 21962. He has acted under color of state law and exceeded his authority to impair rights secured to the plaintiff under the United States Constitution. Anthony McGinty a man, who is employed by the State of New York, acting as a Judge at the Family Court of Ulster County , State of New York.

9)    On information and belief, defendant Andrew Gilday is a resident of New York State with a home located in Ulster County. As relevant to this action, he was and still is a Family Court public defender assigned to a custody case pending since 2008-,2017 in Ulster County entitled CUSTODY, Patrick Beesmer's counsel and extremely unethical; index number 21962. He has acted under color of state law and exceeded his authority by impairing rights secured to the plaintiff under the United States Constitution. He maintains a business as a lawyer under the name Andrew John Gilday ESQ with a principal office located at 111 Green St, Kingston, NY 12401, New York.

10)    On information and belief, defendant Amy Ingram is a resident of New York State with a home located in Ulster County. As relevant to this action, she was involved as assigned attorney for child.  She has acted under color of state law and exceeded her authority to impair rights secured to the plaintiff under the United States Constitution. As relevant here. She

maintains a business as a lawyer under the name Ingram Law Firm with a principal office located at 159 Green St #1, Kingston, NY 12401, New York

11) On information and belief, defendant Patrick V. Beesmer is a resident of New York State with a home located in Ulster County. As relevant here, he conspired with other defendants to impair rights secured to the plaintiff under the United States Constitution.

12) Defendant, Pamela Augustine is a resident of New York State with a residence located in Ulster County, New York. As relevant here, She is the paramour of Patrick Beesmer and has two dwi's on record she also acts as Patrick Beesmer designated driver. She has no legal rights to the child and has her own domestic violence history. She conspired with other defendants to impair rights secured to the plaintiff under the United States Constitution. She publically stated in writing false defamation of character statements against Plaintiff mother Frances Amato and is being separately sued for libel.

### Jurisdiction and Venue

13) This action is brought pursuant to 42 U.S.C. Section 1983 and the First and Fourteenth Amendments to the United States Constitution to redress the deprivation of rights secured to the plaintiff's. Jurisdiction exists by virtue of 28 U.S.C. sections 1331, 1367(a), 2201 and 2202.

14) Declaratory relief is not available in any other forum and is otherwise foreclosed as

a consequence of events described in this Complaint. Due to state laws, customs and practices together with extraordinary circumstances and the protected activity featured against these defendants, an inherent bias further precludes any resort to a state forum for relief.

15) Venue is proper in the county of Ulster, state of New York based upon the residence of the parties and the location of events which give rise to this action.

### Facts Applicable to all Claims

16) The parties, Patrick V. Beesmer and Frances Amato, unmarried shared a child on October 9, 2007  and mother gave birth to  child. The defendant John Doe aka: C`

B      . Matters committed to the Ulster County Family Court were limited principally to grounds for, custody, The committed matters have remained subject to endless and recurring proceedings through abusive laws, practices and customs of the State of New York which advance the fee interests of its  family court bar. As relevant here, such an interest is an arbitrary one which harms the plaintiff and those similarly situated in their liberty rights to a prompt and separate existence without undue infringement by the state.

17) Due to the predictable injury which these accusations would cause to a longstanding career and professional reputation as an advocate, plaintiff was compelled to litigate parenting issues beyond the competency of defendants acting under color of law.

18) On or about May 2016-January 2017, Current Defendant Judge Anthony McGinty (Individual) , conducted proceedings with an inherent bias characterized by such events **Anthony McGinty acted in complete absence of jurisdiction after Judge Marianne O Mizel recused herself after a year and a half trial Anthony**

**McGinty refused to recuse himself;** New York Judiciary Law § 21. Judge other than of court of appeals or appellate division not to decide question argued during his absence

A judge other than a judge of the court of appeals, or of the appellate division of the supreme court, shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge. That the judge acted in the complete absence of all jurisdiction. Id. at 356-57, 98 S.Ct. at 1104-05; Bradley v. Fisher, 80 U.S. 335, 351, 20 L. Ed. 646(1872). Judicial immunity is stated as providing "the maximum ability [of judges] to deal fearlessly and impartially with the public".[2] The justification is as follows: because of the likelihood of innocent individuals being convicted in a court of law under false claims, the "burden" of being subjected to a court of law (a trial) would "dampen" the judges "enthusiasm" or "passion". Barr v. Matteo, 360 U.S. 564 (1959). Opponents of judicial immunity argue that this doctrine is not adequately justified.[3] For example, judges could be shielded from any personal capacity liability, and still be subject to official capacity liability so that they may be held accountable for their injurious acts -- thus "balancing" the "evil" to better protect the fundamental rights of victims.


and demeanor as:

    a)  Highly abusive treatment to myself, all plaintiffs

    b) Violation of constitutional rights and ADA rights

    c)  Caused Extreme pain and suffering and trauma to all plaintiffs by violating our constitutional rights

    d) endangering child welfare, willfully endangering the welfare of a child.

    e) Illegally extended fictitious authority in CLEAR ABSENCE of subject matter

jurisdiction.

19) The state proceedings challenged here remain plagued by retributions for plaintiff's exercise of First Amendment rights of free speech and to petition government for a redress of grievances. The subject matter of plaintiff's activity was of important public concern and included, among other things, the following:

20)Denial of access to the court Anthony McGinty denies access to what he calls "his court" he has denied my rights to proper serving process, denied any evidence into the court for purpose of record. Denied the serious risk and harm to my child- who is currently and not by my consent in public governmental counseling for high risk children. This child was NOT in any high risk prior to either unsupervised paternal visitation and now he is in serious risk and harm while in the custody of Patrick Beesmer. Prior to the failure to protect my child I have been an outspoken community advocate. I work alongside Assemblyman Frank Skartados and chief of Staff Steve Gold since 2014. I have been interviewed in many local papers and local television for my outspoken and very public concerns of this court "ULSTER COUNTY FAMILY COURT" and in particular Judge Anthony McGinty and Judge Marianne o Mizel as well as child attorneys Amy Ingram and Marion Cocose.  21)I am very outspoken in regards to the countless children endangered by the decisions of these Judges and the negligence of these public servants and child attorneys mentioned here. I also worked very closely late 2015 and  the entire year of 2016 with (name omitted for his protection)t at the Ulster county district attorney's office We collected and compiled a wealth of evidence and filed numerous complaints against Judge Anthony McGinty and Marianne O Mizel.  I also spearheaded the first rally for reform in front of

Ulster family court in August of 2014 with many media outlets present exposing the Judges and public servants for the corruption in the court. I also worked for a short period of time compiling evidence with the comptroller's office due to the robbery of taxpayers money as the court dishes out public defenders to non-indigent parties.

22)   Nevertheless, the lucrative processes continued with a series proceedings calculated to harm and suppress the foregoing protected activities under our federal Constitution. Examples of how these defendants individually and collectively harmed plaintiff's exercise of First Amendment and fourteenth amendment  rights Defendant's co-conspired violated Plaintiff's rights and placed my progeny in the custody of a dangerous criminal in violation of Statute, effectively making Anthony McGinty, Amy Ingram and Andy Gilday commission in the kidnapping and endangerment of a minor  are the following proximate retributions:

a)   Intentional Infliction of Emotional Distress Removed my child altering the 9 year status quo from me and my entire family, violating our due process Fourteenth Amendment,

b)  Malicious Trespass

c)  Abuse of Process

d) Retaliation

e) False & unlawful arrest showing no mercy to the mother a victim of domestic violence and lacking what was truly in the  best interest of the child

f) Pre decided trial with no evidence allowed, Obstructing Justice. On January 31, 2017 the Judge did not allow any evidence into the court. He struck from record anything that was

pertinent to the safety of the child and mother and any dangerous qualities that endangered both Petitioners. It was obvious by all who witnessed Judge Anthony McGinty, opposing counsel Andrew Gilday and child attorney "wink, wink, nod, nod" as they held a "mock trial" TO FURTHER ABUSE Frances Amato by using child as pawn in their abusive actions to harm a family in retaliation for advocating for human rights.

g) Child Endangerment

h) Falsely placing mother and child on a missing persons clearinghouse when mother had retained counsel, a sign court date by said Judge Anthony McGinty and was in contact and communication requesting transcripts with Kathy Lasco court clerk. Causing child severe exploitation, fear and duress triggering his PTSD and causing all petitioners public threats, harassment, bullying and humiliation.

23) Accordingly the state proceedings challenged here warrant no deference by this Court under Younger abstention doctrine and the findings or actions of defendants are not entitled to preclusion or other technical obstacles for purposes of federal subject matter jurisdiction. In short, this is an extraordinary case uniquely committed to this Court. Pertaining to Anthony McGinty; When a man acting under color of law as a state judge violates the constitution and knowingly and willfully violates clearly established laws , IMMUNITY IS LOST!!Violations of a State Judge of the Oath to the United States of America of Public Officers and violations of clearly established laws and United States constitution are Federal Crimes. When a judge acts in all absence of jurisdiction, it is an act of Treason.

24) On January 31, 2017 , defendant Judge Anthony McGinty issued a directive to plaintiff under penalty of imprisonment which had the effect of impeding all such activity. Sixty

days in county jail on a civil offense of a woman with no background all because she wanted to protect her child from further addiction and domestic violence. Court bullying and abusive behavior to mock mother and endanger child to make an example of her to the community for exposing human right violations in the Ulster County family court.

 A stay was granted upon New York Supreme Court Appellate Division-third department and immediate release from Ulster County Jail false arrest and abuse of power.

25) The public activity made subject to such abuse included grievances, inquiries and all manner of speech that featured severe criticisms of New York's abusive family court system. Plaintiff Frances Amato even circulated petitions and informational releases, has been on the local news and newspapers outspoken as an advocate against Anthony McGinty and Amy Ingram "I have been a very outspoken and well known advocate against Anthony McGinty and his abuses and discrimination against mothers and children in particular women." He is clear that I have court watched his court and advocated for many other mothers . **"Anthony McGinty** shows a clear bias against mothers who are victims of domestic violence. He robs families of their children and places extremely heavy burdens on mothers for doing what comes naturally. We find this man highly abusive in his STATE PAID POSITION National laws such as the Civil rights act, the Americans with Disabilities Act, and the Violence against women Act are designed to protect vulnerable persons throughout the individual states and territories of the United States. This Judge violates our Title 2, 5 & 7 ADA- as his decisions are traumatizing mothers and children victims of domestic violence and re-triggering PTSD and other emotional traumas associated with his cruel and inhuman decisions to rip apart mothers from children and children from mothers" complaint to Committee on Judicial conduct ie: Anthony McGinty. Petitioner works and continues to work with Ulster County District Attorney's office filing complaints against Anthony McGinty for high volumes of victims of domestic violence and endangered children due to his negligent and abusive court

decisions.

26)    Defendants' responses were calculated to insulate their abuse of authority and licensing privileges from public accountability. I and my progeny are domestic violence survivors who reported the abuse of my progeny and attempted to prevent further abuse from occurring. For this I and my entire family are being subjected to cruel and unusual punishment at the hand of Anthony McGinty, Andrew Gilday, Amy Ingram, Patrick Beesmer (adversary) and Pamela Augustine (Paramour) and as a direct result my progeny minor son is suffering irreparable and immeasurable damage that will affect him for life, akin to the grave trauma and injury. Child attorney Amy Ingram paid by the State of New York; never returned calls to custodial Mother Frances Amato and ignored all abuse to family and child. From date of her appointed to child she fought vehemently for full custody to father Patrick Beesmer and befriended Patrick Beesmer refusing any communication with Custodial mother. Enabled further and extensive abuse and damages to mother and child.

Section 7.2 of the Rules of the Chief Judge applicable to child attorneys expressly

obligates the lawyer to adhere to all ethical requirements. Unfortunately, the "client" in this case is far too unsophisticated to hold this child attorney accountable for a myriad of ethical violations including fraud, dishonesty and conduct harmful to the administration of justice.

The child attorney is abusing an appointment and official authority to retaliate for my reform efforts which have been very public and underway for many years. This "client" was not able to understand how such retaliation was harming our parent-child relations and is dependent on oversight entities like this one to protect him.

In that vein, the child attorney's misconduct is more reprehensible than that associated with lawyers monitored by mature clients. Here She was ill prepared, never returned my calls, did little or nothing over the years to discover true facts, and acted effectively as an advocate for my adversary with no investigation into a background which is hazardous to the child as borne out by a known record. That record is being wholly overlooked strictly to harm me for illicit reasons.

My adversary, judge and appointed child attorney have bullied me and ganged up on me with no neutral arbiter in the courtroom as a consequence. This alone has been ruled sufficient for removal, In re Colleen CC, 232 AD 2d 787 (3rd Dept 1996)(merely adopting position of a

parent sufficient to warrant removal). The lack of attentiveness to a dangerous environment for the child provides further support for removal and ethical accountability, Jamie T.T., 191 AD 2d 132 (3 rd Dept 1993).

27) During the years 2008 TO CURRENT, an extensive record was provided to Judge Marianne O Mizel and later after she recused Defendant Judge Anthony McGinty and reviewed for purposes of bringing an end to this unprecedented case which had produced a number of emotional breakdowns and costly treatment for the plaintiff. Although essentially treating the drawn out proceedings as a default, I require the full and permanent return of my progeny back to me, and an order protecting him from the potential for further damage at the hands of Patrick Beesmer, Anthony McGinty, Amy Ingram, Andrew Gilday, and Pamela Augustine.

28) The retained decisions and orders were regarded as "law of the case" notwithstanding the fluid and non-final nature of childrearing and family court proceedings.

29) The punitive environment was promoted, continued and exacerbated by defendant in May of 2016 when Frances Amato spent hours in Orange County family court finding some relief with a domestic violence specialist who actually reviewed all the criminal history of Patrick Beesmer and took testimony from the minor child declaring his fears an immediate court hearing was afforded and a full protection order given to both mother and child as well as a confidential address in every state to include vacation homes. This court did not direct Frances Amato to the knowledge that her designated person of contact could be the confidential address program in Albany NY. She later learned this; thus causing extreme fear to her chosen designated party Mother Adrienne Auchmoody who credibly testified in Ulster Family Court as to not understanding and not giving Frances Amato any papers that came to her home in Frances's Absence. She testified of her fears for her daughter and grandchild and was mocked

and abused in the family court by Judge Anthony McGinty and Andrew Gilday.

It also needs to be stated that on May 10, 2016 Anthony McGinty removed the child in minutes of a court date from the order of protection. Frances Amato was without counsel and when fear struck her heart she questioned Judge McGinty as to why he would remove her child without seeing evidence from a protective order. He responded "ITS MY COURT IM THE JUDGE" This triggered severe PTSD to Frances Amato left feeling helpless to protect her child from abuse. This action coupled with a prior domestic violence incident in March of 2015 when Frances Amato and child Christian were supposed to be on a float for "Mason's Voice" a child murdered in Ulster County. Instead Frances Amato and Child C.     were verbally and physically threatened and attacked by Patrick Beesmer and Pamela Augustine. A witness Rosie Caruso, credibly testified at trial. Both Patrick Beesmer and Pamela Augustine were arrested for this assault. However, due to the family court only the mother Frances Amato was able to obtain protection orders against Patrick Beesmer and Pamela Augustine and minor child once again was not afforded protection. This also began the PTSD diagnosis to both mother and child from severe and acute stress and the feeling of no protection for the child.

when he/she/they treated a clear case of serious child neglect and abuse as inconsequential, placing plaintiff's child at serious risk of harm. This satisfies the "bad faith" requisite for overcoming prudential and jurisdictional obstacles for declaratory and other relief requested before this Court. The ongoing risk to the child is reflected by the following:  and therefore, The family court stated,  in Judge Anthony McGinty's court order quoted by him "*While the father's history is problematic as described above, and includes instances of domestic violence, the record in this matter does not reveal a single instance in which the father has exposed the child to violence domestic or has attempted to*

*parent the child while under the influence, has neglected the child, or otherwise acted inappropriately toward the child." (R-41)*

The court went on to say,

*"Despite a history that includes criminal convictions and evidence that there have been incidents in the past of domestic violence between the father and his paramour, the father on this record has proved to be the more appropriate custodial parent for this child" (R-42)*

a) Current Paternal drug dealing and drug abuse; positive drug testing

b) Current Paternal repeat criminal contempt and current arrests

c) Current Paternal domestic violence repeat offender

d) Current Paternal Probation violations to include child endangerment

### **First Cause of Action: First Amendment**

30) Plaintiff repeats, reiterates and incorporates the foregoing paragraphs "WE" through "24" of this Complaint as if set forth here in full.

31) The defendants have violated plaintiff's rights knowingly and willfully violated clearly established laws, as well as discriminated against- and having violated the civil and Constitutional rights of Petitioners. Anthony McGinty under color of law has violated and discriminated against Frances Amato and knowingly and willfully co-conspired with Defendants to cause severe pain and suffering, deprivation of rights to punish due to extreme bias against this plaintiff.

32) The latter federal funding law rewards states and their judicial agents through performance grants measured by the number and size of child support orders imposed upon divorce and family court litigants such as plaintiff. Accordingly a systemic financial bias has impaired fair and proper consideration of plaintiff's claims and defenses in the challenged

proceedings. Anthony McGinty requested of the Child Support Magistrate that I pay back the barely a year of 62.00 per week support garnished from Patrick Beesmer's salary while over 9 years we received  NO CHILD SUPPORT and I  being sole provider. Another highly abusive tactic and Abuse of discretion co- conspired by Defendants as a form of extreme punishment and clear bias to Plaintiff's efforts of family court reform and abuse to women and children in exposing said Judge Anthony McGinty throughout the years of a pattern of practice to severe relationships with mothers and their children and children and their mothers for reporting domestic violence and child endangerment.

33)  As a direct consequence of the foregoing, plaintiffs have suffered severe emotional distress, financial collapse, employment harm, parental demise, psycho-somatic injury, physical pain, extreme anxiety, daily stress over a period of years, unlawful arrest and incarceration, opportunity costs, Public threats, harassment, public humiliation, litigation expenses and lawyer fees exceeding $60,000 to the time of this Complaint, all combined in the amount of $10 million.

## Second Cause of Action:  Parental Impairment

34) Plaintiff repeats, reiterates and incorporates the foregoing paragraphs "WE" through "28" of this Complaint as if set forth here in full.

35) As a parent, plaintiff is entitled to Constitutional protection in her exercise of a fundamental right long declared by the Supreme Court to be the oldest liberty interest protected by our federal Constitution. The retributions exerted upon plaintiff represent an abuse of power beyond the proper function of an ever expanding domestic relations court. Without serving for an order of protection and without a trial or hearing, Judge McGinty placed an order of protection

not only against Frances Amato a protective mother to protect her abuser but also to protect her child from the ONLY protection he has from this abuse. He then re-violated mother and child's rights by extending the protection order; this order violates all petitioners rights as they are included as 3rd party although never served or heard  NY LAWS- The FATHER SHOULD BE SUPERVISED- MY SON IS SUFFERING FROM THIS ABUSE CAUSED BY THIS JUDGE

VIOLATING OUR STATE'S LAWS AS MY CHILD IS DAILY ENDANGERED AND I AM BEING SUPERVISED

Under New York law, a parent cannot be subjected to supervised visitation absent a finding that the child is adversely affected by regular visitation and that restriction of the parent's visitation rights---specifically via supervision---would be in the child's best interests.

The most common supervised visitation situations in New York involve noncustodial parents with histories of domestic violence, particularly toward the custodial parent. Domestic violence offenders often use informal visitation arrangements as opportunities to continue to threaten and harass their ex-partners, notwithstanding protective orders; moreover, there is an increased likelihood such parents may abuse or attempt to abduct the common child during visitation. Accordingly, when family violence persists in this manner, New York courts often

find it necessary to require strictly supervised visitation between abusive parents and their children.

Additional factors and attendant circumstances New York courts may consider as justification for supervised visitation include:

1. Parent's mental illness: only if there is potential for harm to the child due to the parent's condition if visits are unsupervised;

2. Parent's substance abuse: only if the parent's alcoholism causes him to act in a manner that could be injurious to the child; or

3. Sexual behavior: only upon a showing that the parent may, if left unsupervised, engage in behavior with a romantic partner in front of the child that would adversely affect the child.

## PROCEDURE FOR IMPOSING SUPERVISED VISITATION

New York courts may only issue supervised visitation orders following a formal judicial hearing complying with state due process requirements. The custodial parent or other appropriate guardian must file a motion with the court for supervised visitation and present evidence supporting her claims, and the noncustodial parent must be given notice and an opportunity to

be heard in court. If the court determines supervised visitation is required, it will issue a binding and enforceable supervision order tailored to the case to best ensure the safety and comfort of the child and custodial parent.

36) Defendants acted individually and in concert with one another to humiliate and destroy the plaintiff through excessive and abusive conduct. The parenting interests raised here are not the "co-equal sharing variety" typically defeated by blanket rationalizations for impairment of the overall right. Rather, plaintiff is challenging the structure of the state's incendiary, lucrative and financially biased custody laws, to wit: Sections 236 and 240 of the New York Domestic Relations Law and companion provisions under the Family Court Act which mandate unequal custody titles.

37) Under these laws, as applied to the plaintiff and continued against her in state court, parents must compete for access to their children without compelling or important state justifications, those principally being federal funding incentives under pretext of promoting our child's so-called "best interests." Plaintiff seeks an order declaring these laws unconstitutional.

34.    The United States Supreme Court has held that:

The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the State to standardize its children by forcing them to accept instruction from public teachers only. The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.

- Pierce v. Society of Sisters, 268 U.S. 510 (1925)

It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. . . . It is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter.

- Prince v. Commonwealth of Massachusetts, 321 U.S. 158 (1944)

The values of parental direction of the religious upbringing and education of their children in their early and formative years have a high place in our society.

Even more markedly than in Prince, therefore, this case involves the fundamental interest of parents, as contrasted with that of the State, to guide the religious future and education of their children. The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.

- Wisconsin v. Yoder, 406 U.S. 205 (1972)

This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.

- Cleveland Board of Education v. LaFleur, 414 U.S. 632 (1974)

Our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural.

- Moore v. East Cleveland, 431 U.S. 494 (1977)

The liberty interest in family privacy has its source, and its contours are ordinarily to be sought, not in state law, but in intrinsic human rights, as they have been understood in "this Nation's history and tradition."

- Smith v. Organization of Foster Families, 431 U.S. 816 (1977)

We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected. We have little doubt that the Due Process Clause would be offended "if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their

children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest."

- Quilloin v. Walcott, 434 U.S. 246 (1978)

The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.  The statist notion that governmental power should supersede parental authority in all cases because some parents abuse and neglect children is repugnant to American tradition. Simply because the decision of a parent is not agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state.

- Parham v. J. R., 442 U.S. 584 (1979)

The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life.

Until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship.

- Santosky v. Kramer, 455 U.S. 745 (1982)

"The best interests of the child," a venerable phrase familiar from divorce proceedings, is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody. But it is not traditionally the sole criterion-much less the sole constitutional criterion-for other, less narrowly channeled judgments involving children, where their interests conflict in varying degrees with the interests of others.

"The best interests of the child" is not the legal standard that governs parents' or guardians' exercise of their custody: So long as certain minimum requirements of child care are met, the interests of the child may be subordinated to the interests of other children, or indeed even to the interests of the parents or guardians themselves.

- Reno v. Flores, 507 U.S. 292 (1993)

In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the rights . . . to direct the education and upbringing of one's children.  The Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests of all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."

- Washington v. Glucksburg, 521 U.S. 702 (1997) The Court's actions in the very least create an appearance of impropriety, if not evidence of actual bias, which I respectfully submit they actually are.

## Third Cause of Action: Due Process

38)  Plaintiff repeats, reiterates and incorporates the foregoing paragraphs "WE" through "32" of this Complaint as if set forth here in full.

39)    Plaintiff was utterly denied her right to a rational, orderly and timely court proceeding before a neutral and detached magistrate or judge. The bias inflicted against plaintiff was both systemic in Ulster Counties Family court and individually applied among the Judge named here.

40)  With each judge assignment, a stigma remains attached to plaintiff, foreclosing any fair and judicious outcome. Meaningful relief is not available in the state's Appellate Division to permit resort ultimately to any federal forum due to the aforesaid systemic bias. Plaintiff's court petitions have been routinely accepted with Supreme Court Appellate Third district  recourse foreclosed from a practical standpoint. However, the child is not yet returned and continues to suffer extreme harm.

41) The foregoing brings the abusive conduct outside the scope of absolute judicial immunity. Targeting speech outside the courthouse is not a "judicial function." Beyond that, defendants have acted without personal and subject matter jurisdiction to arbitrarily control plaintiff's speech, privacy and parenting activity. Currently and upon service of this suit Judge Anthony McGinty responded to retained counsel Meth Law Firm, insulting lawyer who is top ten in the State of New York in response to our request to an emergency discovery hearing with evidence of child endangerment with this quote dated May 4, 2017 further showing his bias and lack of due process "Finally, while I appreciate that you may differ with the Court's conclusions on page 19 of my decision from 2016, which you reference in your letter of April 19, if you believe the Court has erred or that the record in the prior proceedings does not support the Court's determinations,

the appropriate challenge to those determinations are in an appeal, not in further proceedings on these already determined issues before this court.

Very truly yours,

Anthony McGinty
Family Court Judge

c.c.:    A. Gilday, Esq.
         A. Ingram, Esq.

Relief of all orders in violations of the law that due process of law be allowed and further insure relief as the court deems just and appropriate

## Fourth Cause of Action: Declaratory and Injunctive Relief

42)  Plaintiff repeats, reiterates and incorporates the foregoing paragraphs "WE" through "36" of this Complaint as if set forth here in full.

43)  Plaintiff seeks judgment declaring the orders and processes described in this Complaint unconstitutional under one or more of the claims set forth herein. She further seeks an order vacating the punitive custody, contempt and child support orders imposed in state court, an order permanently enjoining the enforcement of a prior restraint upon free speech, and an order permanently enjoining all proceedings being conducted in the state proceedings challenged here.

## Fifth Cause of Action:State law tort;intentional and negligent emotional distress

44) Plaintiff repeats, reiterates and incorporates the foregoing paragraphs "WE" through "24" of this Complaint as if set forth here in full.

45) Plaintiffs have been robbed of one another changing an inseparable 9 year status quo. Defendants worked to co-conspire in the absence of Mother Frances Amato relying on transcripts taking a very unfair advantage of mother who was not properly served due to having a confidential address and being under severe duress due to years of frivolous litigation while being only provider for progeny and dealing with perpetual abuse from Patrick Beesmer using the court to abuse her and the child while repeatedly violating her orders of protection and striking fear continually for herself and child. This court took it upon themselves to sentence an entire family all Petitioners to cruel and inhuman treatment robbing all Petitioners of son, grandson, brother, nephew, cousin and child from Mother, grandmother, sister, niece, nephew, Aunt, Uncle and cousins. All while no parties had a due process court hearing or trial, were never served any form of order. Petitioners were threatened to not go near or call the child. All rights to

an entire family stripped in seconds without any legal merit or cause all because a Judge decided to retaliate against a mother and advocate with an extremely clean background who is a victim of domestic violence and her entire family. All Petitioners had to rely on was the word of Frances Amato to not call or go near their relative C̄     ı B       . An entire close and loving law -abiding, pillars of the community family from business owners to volunteers were robbed with no trial of their relative and child, grand child, brother, cousin, nephew, Godson. The child robbed from the only family he has ever known and felt safe with. The only family who has cared for, nurtured, KEPT SAFE, taught right from wrong from, had stability and structure. All Petitioners have suffered and continue to suffer extreme emotional distress, extreme pain and suffering, extreme cruel and unusual punishment and never committed a crime. The child suffers and is place in governmental HIGH RISK counseling at current due to the extreme trauma from being ripped away unwillingly from his mother and family as well as the unsafe and high risk paternal home he is now in. The irresponsible and irreparable damages to a child who had stability and a loving and caring safe home all because the family wanted to protect him from further risk while on paternal visits. Damages are second by second now not just domestic violence and drug addiction but severe TRAUMA as child is left with questions as to why he is in this situation. 46)This child is being taught that protection is wrong and the current role model of domestic violence and drug addiction is ok. All Petitioners are daily suffering, loss of sleep, work, while the minor child suffers loss of sleep and outbursts at school. Child sleeps in a living room in an apartment with four adults and two bedrooms while adults walk in and out of living room. Child is in a very neglectful home where anything goes and Patrick Beesmer is on probation whereby he violated found positive on drugs and criminal contempt charges and jail

sentencing pending. 47)Petitioner child is suffering from severe separation anxiety of his loving mother and family and in unsafe living condition. All petitioners are suffering extreme trauma and duress. This courts decision and lack of any mercy or concern to human life had caused mother and son victims of domestic violence to be continually re-victimized while giving what they call a problematic violent criminal with an addiction history carte blanche to continue to freely abuse them. This court's decision to punish an entire family who were never defendants or petitioners is an absolute miscarriage of justice and an embarrassment to the integrity of our justice system.

**WHEREFORE,** plaintiff's Frances Amato, John Doe (minor progeny) Adrienne Auchmoody, ToniJean Kulpinski, Vladimir Kulpinski, Michaela Kulpinski, Michelle Arzola, Jane Doe (minor child) John Doe (Minor child) demands judgment as follows:

1)Immediate return of the child (progeny) so he can begin to heal from abuse and trauma and be reunited with his loving mother and family.

2) An award of compensatory damages in the amount of $10,000,000 (TEN MILLION DOLLARS) on each and every cause of action set forth in this Complaint against each and every defendant named in this action.

3) An award of punitive damages in an amount which reflects the outrageous nature of misconduct against plaintiff's and sufficiently discourages its repetition for the benefit of the public.

4) An award of costs and attorney fees pursuant to 42 USC section 1988.

5) Judgment declaring the orders, edicts and processes described in this Complaint unconstitutional together with an order permanently enjoining the enforcement of these orders

DATE: 5|12|17 _____

_____
Michelle Arzola

Plaintiff, pro se


## VERIFICATION

STATE OF NEW YORK)
COUNTY OF Ulster ) ss:


Michelle Arzola, being duly sworn, says that she is the Plaintiff in the within matter, that the foregoing Complaint is true to her own knowledge, except as to those matters therein stated to be on information and belief, and as to those matters, she believes them to be true.

_____
Michelle Arzola

Jane Doe, John Doe minor children


Sworn to before me this
12th day of May, 2017

_____
Notary Public
My Commission Expires: 4|17|19

CHRISTINE M. FELICELLO
Notary Public, State Of New York
Qualified In Ulster County
Reg #01FE5042259
Commission Expries April 17,20 19

DATE: 5/12/17

_____
Frances Amato

Plaintiff, pro se

## VERIFICATION

STATE OF NEW YORK)
COUNTY OF Ulster ) ss:

Frances Amato , being duly sworn, says that she is the Plaintiff in the within matter, that the foregoing Complaint is true to her own knowledge, except as to those matters therein stated to be on information and belief, and as to those matters, she believes them to be true.

_____
Frances Amato

John Doe Progny minor child

Sworn to before me this
12 Day of May, 2017

_____
Notary Public
My Commission Expires: 4/17/19

CHRISTINE M. FELICELLO
Notary Public, State Of New York
Qualified In Ulster County
Reg #01FE5042259
Commission Expries April 17,20 19

DATE: 5/12/17

_____

Adrienne Auchmoody

Plaintiff, pro se

## **VERIFICATION**

STATE OF NEW YORK)
COUNTY OF Ulster ) ss:

_____ being duly sworn, says that she is the Plaintiff in the within matter, that the foregoing Complaint is true to her own knowledge, except as to those matters therein stated to be on information and belief, and as to those matters, she believes them to be true.

Adrienne Auchmoody

Sworn to before me this
12th Day of , May 2017

Notary Public
My Commission Expires: 4/17/19

CHRISTINE M. FELICELLO
Notary Public, State Of New York
Qualified In Ulster County
Reg #01FE5042259
Commission Expries April 17,20 19

DATE: 5|12|17

_____

ToniJean Kulpinski

Plaintiff, pro se

## **VERIFICATION**

STATE OF NEW YORK)
COUNTY OF Ulster ) ss:

ToniJean Kulpinski , being duly sworn, says that she is the Plaintiff in the within matter, that the foregoing Complaint is true to her own knowledge, except as to those matters therein stated to be on information and belief, and as to those matters, she believes them to be true.

_____
ToniJean Kulpinski

Sworn to before me this
12th day of May , 2017

_____
Notary Public
My Commission Expires: 4/17/19

CHRISTINE M. FELICELLO
Notary Public, State Of New York
Qualified In Ulster County
Reg #01FE5042259
Commission Expries April 17,20 19

DATE: 5/12/17

_____

Vladimir Kulpinski

Plaintiff, pro se

## VERIFICATION

STATE OF NEW YORK)
COUNTY OF Ulster ) ss:

Vladimir Kulpinski, being duly sworn, says that she is the Plaintiff in the within matter, that the foregoing Complaint is true to her own knowledge, except as to those matters therein stated to be on information and belief, and as to those matters, she believes them to be true.

_____
Vladimir Kulpinski

Sworn to before me this
12th day of May , 2017

_____
Notary Public
My Commission Expires: 4/17/19

CHRISTINE M. FELICELLO
Notary Public, State Of New York
Qualified In Ulster County
Reg #01FE5042259
Commission Expires April 17,20 19

DATE: 5/12/17

_____

Michaela

Kulpinski Plaintiff,

pro se

## **VERIFICATION**

STATE OF NEW YORK)
COUNTY OF Ulster ) ss:

Michaela Kulpinski, being duly sworn, says that she is the Plaintiff in the within matter, that the foregoing Complaint is true to her own knowledge, except as to those matters therein stated to be on information and belief, and as to those matters, she believes them to be true.

6/02/99 Michaela Kulpinski (minor)

Guardian Toni Jean Kulpinski

Sworn to before me this
12th day of May, 2017
_____
Notary Public
My Commission Expires: 4/17/19

CHRISTINE M. FELICELLO
Notary Public, State Of New York
Qualified In Ulster County
Reg #01FE5042259
Commission Expries April 17,20 19