**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**FRANCES AMATO; JOHN DOE,
progeny minor child; ADRIENNE
AUCHMOODY; TONI JEAN KULPINSKI;
VLADIMIR KULPINSKI; MICHAELA
KULPINSKI; MICHELLE ARZOLA; JANE
DOE, minor child; and JOHN DOE, minor child of
Michelle Arzola,**

                            **Plaintiffs,**

    vs.                                                                             **1:17-cv-00593
(MAD/ATB)**

**JUDGE ANTHONY MCGINTY, individually
and as Ulster County Family Court Judge;
ATTORNEY ANDREW GILDAY, individually
and as a public defender of New York; AMY INGRAM,
state attorney for the child; PATRICK V. BEESMER,
individually; and PAMELA AUGUSTINE, individually,**

                            **Defendants.**
_____

**APPEARANCES:**                                      **OF COUNSEL:**

**FRANCES AMATO**
P.O. Box 820
Marlboro, New York 12542
Plaintiff, *pro se*

**ADRIENNE AUCHMOODY;
TONI JEAN KULPINSKI;
VLADIMIR KULPINSKI;
MICHAELA KULPINSKI;
MICHELLE ARZOLA;**
Plaintiffs, *pro se*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

*Pro se* Plaintiff Frances Amato ("Plaintiff Amato") and various members of her family, also proceeding *pro se*, commenced the instant action on May 26, 2017, alleging various constitutional violations, a state law tort claim, and also seeking injunctive relief. *See generally* Dkt. No. 1. Currently before the Court is Plaintiffs' request for a temporary restraining order ("TRO"). *See* Dkt. No. 8.

## II. BACKGROUND

This action arises out of Plaintiff Amato's involvement in custody proceedings before the Ulster County Family Court regarding Plaintiff Amato's child. *See* Dkt. No. 1 at 3. The other Plaintiffs in this action appear to all be related to Plaintiff Amato and her child. *See id.* at 2-3. Plaintiffs have sued five Defendants, including Family Court Judge Anthony McGinty – the judge presiding over the custody proceedings; Andrew Gilday – the public defender assigned to the child's father in the custody proceedings; Amy Ingram – the appointed attorney for the child during the proceedings; Patrick Beesmer – the child's father; and Pamela Augustine – Mr. Beesmer's "paramour" as Plaintiff Amato describes her. *See id.* at 3-4. The crux of Plaintiff Amato's claims is that Defendants violated her constitutional rights when Mr. Beesmer was awarded custody of their child. The complaint is full of general and conclusory allegations of wrongdoing by Defendants. Of course, the Court has construed Plaintiffs' claims liberally given their *pro se* status.

Although the allegations in Plaintiffs' complaint are somewhat difficult to decipher, it appears that Plaintiff Amato alleges that she was retaliated against during the custody proceedings as a result of her outspoken criticism of Judge McGinty prior to those proceedings. *See id.* at 7. As a result, during the custody proceedings, Plaintiff Amato claims that Judge McGinty "denied [her] rights to proper serving process, denied any evidence into the court for purpose of record,

2

[and] [d]enied the serious risk and harm to [her] child." *Id.* Plaintiff Amata also complains that Judge McGinty engaged in "[h]ighly abusive treatment" and "[c]aused [e]xtreme pain and suffering and trauma to all plaintiffs by violating our constitutional rights." *Id.* at 6.

Plaintiffs further allege that Ms. Ingram, the child's attorney, violated Plaintiffs' constitutional rights when she "never returned calls to [Plaintiff Amato] and ignored all abuse to family and child." *Id.* at 11. Plaintiffs alleges that Mr. Beesmer and Ms. Augustine conspired with the other Defendants to deprive Plaintiffs of their constitutional rights. *See id.* at 4. Plaintiffs do not appear to allege anything specific against Mr. Gilday, but Plaintiffs generally allege that Mr. Gilday effectively participated in the "kidnaping and endangerment of a minor" and that he subjected Plaintiffs to "cruel and unusual punishment," along with the other Defendants. *Id.* at 8, 11. Plaintiffs purport to bring claims for First and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983 ("Section 1983"), and also claim that Defendants are liable for "intentional and negligent emotional distress." *Id.* at 4, 24.

### III. DISCUSSION

"Temporary restraining orders . . . and preliminary injunctions are extraordinary and drastic remedies." *Lawrence v. Zee*, No. 16-CV-1515, 2016 WL 1690669, *1 (E.D.N.Y. Apr. 26, 2016) (citation omitted). The standards for granting either a TRO or a preliminary injunction require the moving party to demonstrate "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Id.* (quoting *County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008)). Moreover, "[t]he movant must carry the burden of persuasion by a clear showing[.]" *Id.*

In the present matter, Plaintiffs fall well short of establishing the standards for a TRO. At the outset, it appears that the custody proceedings have concluded.[1] If the proceedings have concluded, Plaintiff's claim for a TRO restoring custody of her child is barred by the *Rooker-Feldman* doctrine. "Under the *Rooker-Feldman* doctrine, a district court lacks 'subject matter jurisdiction over claims that effectively challenge state court judgments.'" *Arena v. Dep't of Soc. Servs. of Nassau Cty.*, 216 F. Supp. 2d 146, 151 (E.D.N.Y. 2002) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir.2002)). "The Second Circuit has recently stated that the *Rooker–Feldman* doctrine bars a district court from reviewing a family court's determinations regarding custody, neglect and visitation where those issues have been decided after providing the plaintiff a full and fair opportunity to litigate those issues." *Id.* at 152 (citing *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir.2002)). In this case, Plaintiffs merely seek review of the family court's determination regarding custody in the requested TRO. Although Plaintiffs make conclusory allegations that Judge McGinty acted with bias, Plaintiff Amato has completely failed to demonstrate that she was deprived of a full and fair opportunity to litigate the custody issues in family court. Every indication is that Plaintiff Amato is merely upset about the result of the custody proceedings. Accordingly, the *Rooker-Feldman* doctrine prevents the Court from issuing the requested TRO, which would require the Court to review a state court judgment.[2]

If, on the other hand, the proceedings are still ongoing, *Younger* abstention is appropriate and the Court will not grant the requested injunctive relief. *See Younger v. Harris*, 401 U.S. 37

---

[1] Plaintiff Amato attached a letter from Judge McGinty stating that if Plaintiff Amato disagrees with Judge McGinty's decision from 2016, the appropriate remedy is an appeal. *See* Dkt. No. 1 at 22-23. Moreover, every indication from the complaint is that Mr. Beesmer already has custody of the child.

[2] It may be that the *Rooker-Feldman* doctrine bars all of Plaintiffs' claims in this case, but at this juncture the Court is only reviewing Plaintiffs' application for a TRO.

4

(1971).  "*Younger* requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings."  *Torres v. Gaines*, 130 F. Supp. 3d 630, 635 (D. Conn. 2015).  This doctrine "applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'"  *Id.* at 636 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)).  "If the federal action falls into one of these three categories, a Court may then consider the additional factors described in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)."  *Id.*  Since the Supreme Court's decision in *Sprint*, several courts in this Circuit have held that *Younger* abstention applies in similar circumstances as this case.  *See id.*; *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459, 2015 WL 1120120, *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that the plaintiff's claims for injunctive relief were barred by *Younger* where the plaintiff sought to challenge ongoing family court proceedings regarding the loss of custody of her son).  Moreover, like in *Graham*, the *Middlesex* factors[3] weigh in favor of invoking *Younger* abstention in this case.

      Even if the Court had the authority to grant the requested TRO, the Court would decline to do so since Plaintiffs have not established a likelihood of success on the merits or sufficiently serious questions going to the merits.  Since most, if not all, of Plaintiffs' claims arise out of the underlying custody proceedings, it is likely that all of their claims are barred by the *Rooker-Feldman* doctrine.  Moreover, generally speaking, Plaintiff merely asserts conclusory allegations of wrongdoing that would likely not survive a Fed. R. Civ. P. 12(b)(6) motion.

---

[3] The factors examine "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims."  *Torres*, 130 F. Supp. 3d at 636.

Specifically, Judge McGinty is entitled to absolute judicial immunity for his actions that are judicial in nature. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 523 (E.D.N.Y. 2010). The allegations in the complaint appear to relate directly to Judge McGinty's role as a judge in the custody proceedings. *See* Dkt. No. 1 at 7. Plaintiffs argue that he acted in excess of his jurisdiction because he violated Section 21 of the New York Judiciary Law, and thus, is not entitled to absolute immunity. *See id.* at 6. However, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Accordingly, Judge McGinty is likely entitled to absolute immunity from Plaintiffs' claims. Similarly, Ms. Ingram is also entitled to quasi-judicial immunity for her actions arising from her representation of the child. *See McKnight*, 699 F. Supp. 2d at 528-29.

With respect to the remaining Defendants, it appears that Plaintiffs primarily attempt to assert a Section 1983 conspiracy claim against them. However, the allegations "fall[] far short of pleading a 'close nexus' or 'joint engagement' to sustain a [Section 1983] claim." *Id.* at 531. Plaintiffs merely allege that these Defendants participated in the proceedings, but do not appear to allege any specific wrongdoing. Accordingly, Plaintiffs have not demonstrated a likelihood of success on the merits or raised sufficiently serious questions going to the merits.

## IV. CONCLUSION

Having carefully reviewed Plaintiffs' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' application for a temporary restraining order (Dkt. No. 8) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 2, 2017
      Albany, New York

Mae A. D'Agostino
U.S. District Judge