# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

FRANCIS AMATO, et al.,

                                        Plaintiffs,

           v.                                    1:17-CV-593
                                                         (MAD/ATB)

JUDGE ANTHONY McGINTY, et al.,

                                     Defendants.

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiffs Francis Amato, her son "John Doe," Adirenne Auchmoody, Toni Jean Kulpinski, Vladimir Kulpinski, Michaela Kulpinski, Michelle Arzola, and Ms. Arzola's two children, who have also been referred to as Jane and John Doe. (Complaint ("Compl.") at 1). Plaintiffs have paid the filing fee for this action. However, the court will conduct an initial review of the complaint.[1] Plaintiff Amato has also filed a motion to obtain an ECF Login and Password. (Dkt. No. 10).

A complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Preacely v. City of New York*, 622 F. App'x 14, 15 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility

---

[1] The court notes that on June 2, 2017, plaintiff Amato filed a motion for a Temporary Restraining Order. (Dkt. No. 8). District Judge D'Agostino denied the motion on the same day. (Dkt. No. 9).

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A case is "frivolous" when either the factual contentions are "clearly baseless or when the claim is based upon "an indisputably meritless legal theory." *Id.* (quoting *Livingston v. Adirondack Beverage Co.*, 141 F. 3d 434, 437 (2d Cir. 1998)). A district court has inherent authority to dismiss a frivolous action sua sponte "even when the plaintiff has paid the required filing fee.'" *Id.* (quoting *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000)). Finally, a federal court has a continuing and independent obligation to examine its subject matter jurisdiction sua sponte. *Robbins v. City of New York*, No. 17 Civ. 2229, 2017 WL 2274975, at *2 (E.D.N.Y. May 19, 2017) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). *See also Forde v. Hornblower New York, LLC*, __ F. Supp. 3d __, 2017 WL 1078585, at *2 (S.D.N.Y. Mar. 20, 2017) (citations omitted).

## I.    **Complaint**

This civil rights action has been brought by plaintiffs Frances Amato, her son ("CB"), Adrienne Auchmoody (CB's grandmother), Toni Jean Kulpinski (CB's Aunt and Godmother), Vladimir Kulpinski (CB's Uncle and Godfather), Michaela Kulpinski (CB's cousin), and Michelle Arzola and her two minor children (CB's sister, niece, and nephew). (Compl. ¶¶ 1-7).

2

Plaintiffs appear to challenge the conduct of defendant Ulster County Family Court Judge Anthony McGinty relative to a custody proceeding involving CB. (Compl. ¶¶ 8, 16). Plaintiffs have also named Attorney Andrew Gilday, who plaintiffs state is a "Public Defender," but appears to be the assigned counsel for Patrick Bessmer - CB's father[2] - in the custody proceeding. (Compl. ¶ 9). Patrick Bessmer and his alleged "paramour," Pamela Augustine are also named as defendants. (Compl. ¶¶ 11, 12). Plaintiffs have also named Amy Ingram, Esq., CB's assigned attorney for the custody proceeding.

Plaintiffs allege that defendant McGinty was "highly abusive" to "all" plaintiffs; violated "constitutional" and "ADA rights;" caused "extreme pain, suffering, and trauma to "all" plaintiffs when he violated their constitutional rights; endangered the welfare of "a child;" and "illegally extended fictitious authority in CLEAR ABSENCE of subject matter jurisdiction." (Compl. ¶ 18(a)-18(e)). Plaintiff Amato then describes conduct that was allegedly directed at her.[3] (Compl. ¶ 20). Plaintiff Amato alleges that defendant McGinty denied access to "'his court,'" denied plaintiff Amato her "rights to proper serving process," denied "any evidence into the court for purpose of record," and denied "the serious risk and harm to [her] child- who is currently and not by [her]

---

[2] Plaintiff Amato and defendant Patrick Bessmer were apparently not married.

[3] The court notes that, although there are multiple plaintiffs, most of the defendants' alleged conduct was directed at plaintiff Amato alone. Plaintiff Amato appears to allege that the defendants' conduct toward her and CB injured the other defendants because of their family relationship to plaintiff Amato and CB. (*See* Compl. ¶ 45) (stating that "no parties had a due process court hearing or trial, [and] were never served any form of order").

consent in public governmental counseling for high risk children." (Compl. ¶ 20).

Plaintiff Amato believes that the state proceedings "remain plagued by retributions [sic]

for plaintiff's exercise of First Amendment rights to free speech and petition

government [sic] for redress of grievances." (Compl. ¶ 19).

Plaintiff Amato alleges that she is an "outspoken advocate," working along side

the District Attorney of Ulster County to compile evidence and to file numerous

complaints against defendant McGinty. (*Id.*)  Plaintiff Amato states that she has been

interviewed by many local newspapers and television stations regarding her concerns

about Ulster County Family Court and attorney Amy Ingram.  Plaintiff claims she has

been "very outspoken" regarding the "countless children" endangered by the "decisions

of these judges and the negligence of these public servants and child attorneys

mentioned [in the complaint.]" (*Id.*)

Plaintiff Amato lists a series of alleged violations which were committed by

defendant McGinty, together with defendants Ingram and Gilday, resulting in the

"kidnaping" and "endangerment of a minor." (Compl. ¶ 22).[4]  Plaintiff Amato states

that these three defendants intentionally inflicted emotional distress by removing her

child, "altering the 9 year status quo from me and my entire family, violating ***our*** due

process . . . ." (Compl. ¶ 22(a)).  These three defendants also allegedly committed

"Malicious Trespass," "Abuse of Process," "Retaliation," "False and Unlawful Arrest,"

---

[4] There appears to be no ¶ 21 in the complaint.

4

"Pre decided trial with no evidence allowed, Obstructing Justice," "Child

Endangerment," and "Falsely placing mother and child on a missing persons

clearinghouse . . . ." (Compl. ¶ 22(b)-22(h)).

The complaint contains three "Causes of Action," which contain additional facts

and various citations to case law. (Compl. ¶¶ 30-41).  The first cause of action is "First

Amendment." (Compl. ¶¶ 30-33).  The second cause of action is "Parental Impairment,"

and the third cause of action is "Due Process." (Compl. ¶¶ 34-37, 38-41).  Because of

the way that the complaint is written, rather than repeating all of the facts, the court will

discuss the additional facts as necessary to the analysis of plaintiff's complaint.

## II.    <u>Judicial Immunity</u>

### A.    **Legal Standards**

With minor exceptions, judges are entitled to absolute immunity for actions

relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10

(1991).  Judicial immunity has been created for the public interest in having judges who

are "at liberty to exercise their functions with independence and without fear of

consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004).  Judicial

immunity applies even when the judge is accused of acting maliciously or corruptly.

*Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S.

547, 554 (1967)).  Judicial immunity is immunity from suit, not just immunity from the

assessment of damages.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The only two

circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam)).  Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences. . . ." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself" - whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 436 U.S. 349, 362 (1978)).  The parties must have dealt with the judge in his or her "judicial capacity." *Id.*  The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)).  The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13).

### B.    Application

Plaintiffs have named Ulster County Family Court Judge Anthony McGinty as a

defendant.  Plaintiff states that the "defendants" have violated "clearly established laws." (Compl. ¶ 31).  Plaintiffs allege that defendant McGinty is biased, discriminates against women who are victims of domestic violence, and has retaliated against plaintiff Amato because she has spoken out against him and other Family Court judges, staff, and appointed counsel for her child.

Plaintiffs claim that the "federal funding law" rewards "states and judicial agents," based on the "number and size of child support orders." (Compl. ¶ 32).  Based on this "fact," plaintiffs state that a "financial bias has impaired fair and proper consideration of plaintiff's claims and defenses in the challenged proceedings." However, all of Judge McGinty's alleged "biased" or "illegal" conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case.  Whether the judge's conduct involved issuing orders based on "funding," allegedly biased decisions in favor of defendant Bessmer, or making decisions that were not in the best interest of CB, these were all actions taken in the course of a custody proceeding in his capacity as a Family Court Judge.  Thus, Judge McGinty is entitled to judicial immunity.

Plaintiff attempts to argue that Judge McGinty acted "in absence" of jurisdiction because he took over plaintiff's custody case from another judge in violation of N.Y. Judiciary Law § 21. (Compl. ¶ 18).  Plaintiff Amato's argument is misplaced.  N.Y. Judiciary Law § 21 reads as follows:

> A judge other than a judge of the court of appeals, or of the
> appellate division of the supreme court, shall not decide or
> take part in the decision of a question, which was argued
> orally in the court, when he was not present and sitting therein
> as a judge.

N.Y. Jud. Law § 21. This means that a trial-level judge shall not decide factual issues that were tried before a different judge. *See People v. Hampton*, 21 N.Y.3d 277, 284-85 (2013). This applies to situations in which the new judge is called upon to make rulings based on an evaluation of testimony that he or she did not hear. *Id.* at 286. It does not apply to motions involving pure issues of law. *Id.* at 285. This also does not mean that a judge cannot take over a custody case, or any other action, after another judge has recused herself. *See id.* Otherwise, no judge could ever be replaced after a case has begun.

Plaintiff does not allege that there were motions pending that the previous judge did not address when Judge McGinty took over the case. In fact, the complaint indicates that Judge McGinty presided over the challenged proceedings himself. (Compl. ¶ 22(f)). Plaintiff Amato states that Judge McGinty "pre-decided" the trial with no evidence allowed. (*Id.*) Plaintiff Amato states that defendant McGinty "struck from the record anything that was pertinent to the safety of the child and mother . . . ." (*Id.*) Finally, plaintiff alleges that defendant McGinty and defendants Gilday and Ingram held a "mock trial." (*Id.*) Thus, the judge heard the factual issues in question, and plaintiff has not alleged a violation of Judiciary Law § 21.

In any event, even if the judge acted in violation of Judiciary Law § 21, the appropriate remedy in state court would be remand to the same judge for his or her own

8

hearing of the issue and a subsequent decision. *Id.* at 286.  Although the state court has referred to this statute as "jurisdictional," it is only with respect to the particular decision that the judge made without hearing the evidence him or herself. *Id.*  It does not deprive the court of "jurisdiction" over custody cases.  Judge McGinty was still a family court judge with jurisdiction over custody matters.  At worst, if Judge McGinty decided a motion or issue improperly, he would have been acting "in excess" of jurisdiction, and he would still be entitled to judicial immunity.

Plaintiffs challenge rulings by Judge McGinty and complain of the way that he managed his courtroom, allegedly "denying access to what the judge called 'his court.'" (Compl. ¶ 20).  Judge McGinty allegedly placed CB in "governmental counseling for high risk children" without plaintiff Amato's consent, "denied evidence . . . for purpose of record; and "falsely" placed plaintiff Amato and CB on a "missing persons clearinghouse." (Compl. ¶¶ 20, 22(h)).  Plaintiffs allege that on January 31, 2017, defendant McGinty "issued a directive to plaintiff [Amato] under penalty of imprisonment . . . . sixty days in county jail on a civil offense of a woman with no background at all because she wanted to protect her child from further addiction and domestic violence." (Compl. ¶ 24).  Plaintiff Amato alleges that the court mocked her and endangered CB with its rulings. (*Id.*)  Plaintiff Amato also claims that a "stay" was granted by the Appellate Division, which ordered plaintiff's immediate release from the Ulster County Jail "false arrest and abuse of power." (*Id.*)

Notwithstanding plaintiffs' allegations that the Judge made improper adverse rulings against plaintiff Amato during the custody proceeding with malice or in

retaliation for her "exposing" abuses in Family Court, the judge was still performing judicial functions and presiding over plaintiff's custody action. As stated above, a judge does not lose his or her judicial immunity because he or she is accused of acting with malice or corruptly.

In *Koziol v. King*, the plaintiff sued a variety of judges in connection with custody and support proceedings. *Koziol v. King*, No. 6:14-CV-946, 2015 WL 2453481 (N.D.N.Y. May 22, 2015). In *Koziol*, then-Chief District Court Judge Gary Sharpe dismissed claims against County Court Judge King which related primarily to visitation and custody orders in matters pending before him, based on absolute immunity. *Id.* at *8. Plaintiff Koziol had also challenged that way that Judge King "managed his courtroom." *Id.*

In dismissing the claims against Judge King, Judge Sharpe cited *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at *5 (N.D.N.Y. Oct. 16, 2014), in which the court held that a family court judge was protected by judicial immunity where the plaintiff alleged that the judge denied him custodial and visitation rights because he was a Muslim, which violated his civil rights. Thus, judicial immunity is not lost because plaintiff alleges that the judge's decision was unconstitutional. Plaintiffs in this case disagree with the judge's decisions. (Compl. ¶ 29). Plaintiff Amato quotes the judge's order awarding custody to defendant Bessmer, and states that the judge did not properly consider CB's father's drug dealing, drug abuse, arrests, domestic violence, and probation violations. (*Id.*)

Plaintiff Amato also states that defendant McGinty abused his authority when he

issued an order of protection without "a trial or hearing," and subjected plaintiff Amato to supervised visitation, allegedly contrary to New York law. (Compl. ¶ 35). Plaintiff discusses the proper procedure for "imposing supervised visitation," and faults the judge as well as the other defendants for imposing such restrictions on her. However, these decisions are also within the purview of the Family Court Judge. Even if the judge was incorrect in imposing the alleged restrictions to plaintiff Amato's visitation, it would not deprive Judge McGinty of judicial immunity.

Plaintiff Amato clearly has issues with the Family Court system and claims that the system has been abused by Judge McGinty. The complaint also contains two paragraphs which refer to "financially based custody laws" and states that "Plaintiff" seeks an order declaring Sections 236 and 240 of the Domestic Relations Law unconstitutional. (Compl. ¶¶ 36). Judge McGinty's application of the laws that he has jurisdiction to interpret does not deprive him of judicial immunity, even if those laws were unconstitutional. The constitutionality of state statutes is an issue separate from judicial immunity.[5]

---

[5] Although plaintiffs' complaint asks that two sections of New York Domestic Relations Law be declared "unconstitutional," the court must first note that, to the extent that the claim could be asserted at all, it could only be asserted by plaintiff Amato because she is the only plaintiff who has been a party to the custody proceedings and to whom the statute would have been applied. In addition, none of the individuals named as defendants are proper defendants in such an action. Finally, in cases involving Domestic Relations issues, the court must afford the state court appropriate deference in light of ongoing proceedings involving the plaintiff. *See Kahn v. Shaiswit*, 414 F. Supp. 1064, 1068 (S.D.N.Y. 1976) (dismissing an action by plaintiff husband in a divorce matter in which he challenged the constitutionality of New York Domestic Relations Law § 239). The court in *Kahn* cited *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976), in which Judge Oakes stated in a concurring opinion, that "'probate and domestic relations are matters which have long been recognized as invoking, at least initially, interests which are predominantly of state concern." *Id.* at 1067 (quoting *Mendez*, 530 F.2d at 461). Thus, to the extent that plaintiff Amato may be attempting to challenge the constitutionality of sections of the New York Domestic Relations Law, the claim may be dismissed.

Plaintiff Amato claims in her third cause of action that she was denied the right to a "rational, orderly and timely court proceeding before a neutral and detached magistrate or judge." (Compl. ¶ 39). This is clearly an action that is judicial in nature, and Judge McGinty would be entitled to judicial immunity for any such claim. The same is true for plaintiff's state law claims of intentional and negligent infliction of emotional distress. Thus, plaintiffs'[6] complaint must be dismissed as against defendant McGinty.

It has also been held that law guardians are entitled to absolute quasi-judicial immunity for their actions in representing children in Family Court. *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at *5 (N.D.N.Y. Oct. 16, 2014) (citing inter alia *Yapi v. Kondratyeva*, 340 F. App'x 683, 685 (2d Cir. 2009) (citations omitted)); *Holland v. Morgenstern*, No. 12-CV-4870, 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) (citations omitted); *Lewittes v. Lobis*, No. 04 Civ. 155, 2004 WL 1854082, at *11 (S.D.N.Y. Aug. 19, 2004) (citations omitted)). In *Lewittes*, the court held that the plaintiff would have other available remedies if the child's attorney were derelict in performing his or her duties. 2004 WL 1854082, at *12. This holding is supported by New York State court decisions holding that such guardians are protected by quasi-judicial immunity. *Id.* at *11-12 (citing inter alia *Bluntt v. O'Connor*, 291 A.D.2d 106, 737 N.Y.S.2d 471 (4th Dep't), appeal denied, 98 N.Y.2d 605, 746 N.Y.S.2d 279

---

[6] Judicial immunity applies to shield Judge McGinty's liability as to all the plaintiff's, although plaintiff Amato is generally the plaintiff to whom the complaint refers. Plaintiff Amato appears to attempt to include the other plaintiffs by stating that they did not get "hearings," they do not appear to have been parties to the custody case. To the extent that any of the other "plaintiffs," uncle, aunt, grandmother, sister, niece and nephew had dealings with Judge McGinty, it was only in connection with the custody action, and the judge is entitled to absolute immunity no matter who the plaintiff is.

(2002)).  Thus, defendant Ingram, as the attorney for CB would also be entitled to absolute immunity, and the complaint must be dismissed as against her.

## III.    **State Action**

### A.    **Legal Standards**

To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).  The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y.  Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)).

Private conduct is simply beyond the reach of section 1983 "'no matter how discriminatory or wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).  A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam).  The nexus to the state must be so close as to be

13

fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

### B.     Application

Plaintiffs have sued Attorneys Andrew Gilday and Amy Ingram[7] as well as Patrick Bessmer and his girlfriend, Pamela Augustine.  With respect to Attorneys Gilday and Ingram, it is well-established that private attorneys do not act under color of state law even if they are court-appointed attorneys, performing their traditional function as counsel. *See Harmon v. New York County Dist. Attorney's Office*, No. 13 Civ. 1711, 2014 WL 1044310, at *9 (S.D.N.Y.  March 17, 2014) (citing inter alia *Brown v. Legal Aid Soc'y*, 367 F. App'x 215, 216 (2d Cir. 2010); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)).  *See also Licari v. Voog*, 374 F. App'x 230, 231 (2d Cir. 2010) (private attorneys, even if they are court-appointed, and/or associated with a Legal Aid organization, do not act under color of state law when representing their clients).  According to plaintiffs, defendant Gilday is the court-appointed attorney for defendant Bessmer, and defendant Ingram was appointed by the court as the attorney for CB.

Defendants Bessmer (CB's father) and Augustine are clearly private parties who do not act under color of state law for purposes of section 1983.  Although plaintiffs allege that Bessmer and Augustine "conspired" with other defendants, plaintiff states no facts to support these conclusory statements that are dispersed throughout the complaint. (Compl. ¶¶ 11, 12).  Conclusory allegations of conspiracy are insufficient to

---

[7] As stated above, defendant Ingram is entitled to immunity.  The lack of state action is an alternative basis for dismissal as against this defendant.

state a claim under the civil rights laws. *See Brown*, 367 F. App'x at 216 (color of state law may be established if the individual conspired with a state actor, however, conclusory allegations of conspiracy are insufficient).  The only state actor is Judge McGinty, and there is no indication, other than the judge's decision in Bessmer's favor, how defendant Bessmer or defendant Augustine would have "conspired" with the judge sufficient to establish that they acted under color of state law.[8]

Plaintiffs allege that defendants Gilday, Ingram, and Judge McGinty "co-conspired," violated her rights and placed CB in the custody of a dangerous criminal in violation of "Statute." (Compl. ¶ 22).  "Merely resorting to the courts and being on the winning side of a lawsuit does not rise to the level of "conspiracy." *Dennis v. Sparks*, 449 U.S. 24, 27 (1988).  Defendant Gilday was appointed to represent defendant Bessmer and had a duty to represent his interests in the custody proceeding.  Defendant Ingram was appointed to protect the interests of CB during the proceedings. Plaintiff faults Attorney Ingram for being ill prepared, not returning plaintiff Amato's calls, and was generally an ineffective advocate for CB.  Plaintiff claims that defendant Ingram also "fought vehemently" in favor of custody for defendant Bessmer (Compl. ¶ 26).  Plaintiff also states that her "adversary," the judge, and the appointed child attorney "ganged up" on her. (Id.)

Defendant Ingram's alleged incompetence and the fact that the judge ultimately

---

[8] Plaintiff alleges that she was verbally and physically threatened by defendants Bessmer and Augustine outside the court, and that Judge McGinty only issued an order of protection for plaintiff Amato and not for CB. (Compl. ¶ 29).  The alleged attack by Bessmer and Augustine was certainly a "private action," and the judge's failure to issue a protective order for CB is not alleged to have been the result of any "conspiracy."

ruled in defendant Bessmer's favor does not indicate that the judge conspired with the attorneys regarding his ruling or that defendants Bessmer and Augustine somehow conspired with the judge to obtain a favorable result. Thus, the complaint may be dismissed in its entirety as against defendants Attorney Gilday, Attorney Ingram, Bessmer and Augustine.

## IV.   **Minor Child Plaintiffs**

### A.   **Legal Standards**

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself.[9] *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654.

### B.   **Application**

Plaintiff's have listed various "John" or "Jane" Doe minors as plaintiffs, including CB, plaintiff Amato's child. The adult plaintiffs have all signed the complaint and added their John or Jane Doe children under their names.[10] (Compl. CM/ECF pp. 27, 28, 32). However, while the adults may represent their own interests, they may not represent the interests of their children. *See Cheung v. Youth Orchestra Found. of Buffalo*, 906 F.2d 59, 61 (2d Cir. 1990) (a non-attorney parent must be

---

[9] An limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case. An exception has also been established for parents representing their children in applications for Supplemental Security Income ("SSI"). *Machadio v. Apfel*, 276 F.3d 103, 106-07 (2d Cir. 2002). However, the interests of the child and the parent were "intertwined," and the Social Security regulations provided for such representation.

[10] One plaintiff has attempted to sign the complaint herself as a "minor," with her "guardian" signing the complaint underneath the minor's name. (Compl. at CM/ECF p.32).

represented by counsel in bringing an action on behalf of his or her child because the choice to appear pro se is not a true choice for minors who, under state law, cannot determine their own legal actions) (citing Fed. R. Civ. P. 17(b)).  The court in *Cheung* further stated that it is not in the interests of minors or incompetents that they be represented by non-attorneys. *Id.*  "Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.* Thus, the minor children may not be plaintiffs on their own because they are minors,[11] and the adult plaintiffs may not represent their children. *See also Armatas v. Maroulleti*, 484 F. App'x 576 (2d Cir. 2012).

The court would also point out that although all the adult plaintiffs have signed the complaint, they did not include their addresses.  The only specific contact information is for plaintiff Amato.  The complaint contains a description of the various plaintiffs and generally where they live,[12] but no specific addresses have been provided. (Compl. ¶¶ 3-7).  Plaintiff Amato may not act on behalf of any of the other plaintiffs because she is not an attorney.  This includes accepting mail from the court and sending it to the other plaintiffs.  In any event, as discussed below, the adults, other than the plaintiff have no standing to bring this action.

## V.   <u>Standing</u>

### A.   **Legal Standards**

A plaintiff bears the burden of establishing that he or she has standing to bring an

---

[11] Fed. R. Civ. P. 17(e).

[12] Most of the plaintiffs live in New York State, but Michelle Arzola and her two "Doe" children" live in Ohio. (Compl. ¶ 7).

action in federal court. *Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011). "To establish constitutional standing, a plaintiff must show (1) an injury in fact, (2) causation between the injury and the offensive conduct, and (3) 'a likelihood that the injury will be redressed by a favorable decision.'" *Heath v. Banks*, No. 16-3493-cv, slip. op. at 2 (2d Cir. June 5, 2017) (quoting *Susan B. Anthony List v. Driehous*, __ U.S. __, 134 S. Ct. 2334, 2341 (2014)). In addition, there is a "prudential standing rule" which states that, normally litigants are barred from "asserting the rights or legal interests of others in order to obtain relief from injury to themselves. *Id.* (quoting *Rajamin v. Deutsche Bank Nat't Tr. Co.*, 757 F.3d 79, 86 (2014)).

## B.    Application

In this case, plaintiff Amato has added other adult plaintiffs, including her mother, CB's Aunt and Uncle, and CB's adult cousin. None of these individuals are parties to the custody action, and it is unclear how family that lives in Ohio, (Compl. ¶ 7), would have standing to assert claims in this case. According to the prudential standing rule, the additional plaintiffs would be barred from asserting the legal interests of either plaintiff Amato or CB even if the other plaintiffs claimed that they are "injured" by any of the defendants' actions. Thus, the complaint may also be dismissed for lack of standing as against all plaintiffs other than plaintiff Amato and CB.

## VI.    *Rooker-Feldman,* **The Domestic Relations Exception, and** *Younger v. Harris*

### A.    The Domestic Relations Exception

#### 1.    Legal Standards

Under the domestic relations exception to the jurisdiction of federal courts, cases

involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshal v. Marshall*, 547 U.S. 293, 308 (2006).  This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).  In *Bukowski v. Spinner*, No. 17-CV-845, 2017 WL 1592578  (E.D.N.Y. Apr. 28, 2017), the District Court dismissed a fee-paid action, sua sponte which raised very similar claims to the case herein.  In *Bukowski*, the plaintiff sought to challenge rulings made in an underlying state court child custody case,[13] naming the Judge, law guardian, and County Attorney, among other defendants. *Id.*  Plaintiff in *Bukowski* criticized the Judge, stated that the law guardian was "not troubled" by the judge's actions, criticized the caseworkers, and claimed that she was subjected her to "unfounded" charges. *Id.* at *1.

### 2.    Application

Plaintiffs in this case are making the same claims and challenging similar actions by the state court judge and the state court attorneys who appeared in plaintiff Amato's custody case.  The plaintiff in *Bukowski* also raised "constitutional" issues, but the court recognized that the allegations essentially challenged a state domestic relations matter, and were therefore, outside the federal court's jurisdiction.  2017 WL 1592578, at *3 (citations omitted).  A review of  plaintiffs' request for relief in this case shows that they are essentially challenging the state court's action.  In addition to substantial

---

[13] One of the rulings granted sole custody to the father of the child. 2017 WL 1592578, at *1.

monetary damages, plaintiffs seek "immediate return" of CB, together with a judgment "declaring the orders, edicts, and processes described in this Complaint unconstitutional with an order permanently enjoining the enforcement of these orders." (Compl. at CM/ECF p. 26).

In order to return custody of CB to plaintiff, or to "enjoin" the state court's orders, this court would have to re-determine the judge's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See also Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees").  Thus, the case may be dismissed based on the domestic relations exception.  To the extent that the custody case has been concluded, the court will also discuss alternate bases for dismissal.

### B.    *Rooker-Feldman*

### 1.    **Legal Standards**

A dismissal pursuant to the *Rooker Feldman*[14] doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013).  This doctrine divests the

---

[14] *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414  17 (1923).

federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

There are four requirements to the application of *Rooker Feldman*: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff's injuries must have been caused by the state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the judgment must have been rendered prior to filing the federal court action. *Bukowski*, 2017 WL 1592578, at *3 (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

## 2.    Application

As Judge D'Agostino stated in her June 2, 2017 decision, under the *Rooker Feldman* doctrine, the district court also does not have subject matter jurisdiction over claims that effectively challenge state court judgments in general. (Dkt. No. 9) (quoting *Arena v. Dep't of Soc. Servs. of Nassau Cty.*, 216 F. Supp. 2d 146, 151 (E.D.N.Y. 2002)). Although it is unclear whether the plaintiff's custody case is finally decided because plaintiff claims that the Judge scheduled a proceeding in "October" notwithstanding that the witnesses were ready to testify.[15] (Dkt. No. 8 at CM/ECF p.4). To the extent that plaintiff's custody case is terminated, or to the extent that plaintiff

---

[15] Plaintiff Amato does allege that custody has already been awarded to defendant Bessmer.

seeks review of decisions that the judge has already issued, this complaint is barred by *Rooker Feldman* because plaintiff is essentially challenging the state court's decision. Plaintiff lost in state court, her injuries are allegedly causes by the state court judgment that she seeks to overturn, plaintiff is asking this court to overturn Judge McGinty's rulings, and it appears that custody was awarded to Mr. Bessmer prior to plaintiff bringing this action. Thus, all the requirements for *Rooker Feldman* have been met with respect to orders that have already been issued by Judge McGinty.

### C.    *Younger v. Harris*[16]

#### 1.    Legal Standards

In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. at 43-44. The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id.* *Younger* abstention has been expanded to include state civil proceedings which are akin to criminal prosecutions[17] and state court proceedings which implicate a state's interest in enforcing the orders and judgments of its courts.[18] Until 2013, the abstention analysis involved determining (1) whether there was an ongoing state proceeding; (2) whether an important state interest was implicated; and (3) whether the plaintiff had an avenue open for review of

---

[16] 401 U.S. 37 (1971).

[17] *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975).

[18] *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987).

constitutional claims in state court. *See Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432 (1982); *Parent v. New York*, 485 F. App'x 500, 503 (2d Cir. 2012) (quoting *Younger, supra*; *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997)).

In *Sprint Communications, Inc. v. Jacobs*, __ U.S. __, 134 S. Ct. 584, 588 (2013), the Court revisited the analysis required to invoke abstention under *Younger*. In *Sprint*, the Court rejected the three-part test in favor of a "categorical approach." *Mir v. Shah*, 569 F. App'x 48, 51 (2d Cir. 2014) (citing *Sprint*, 134 S. Ct. at 591-94). *Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) civil proceedings that are akin to criminal proceedings; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* (quoting *Sprint*, 134 S. Ct. at 588).  In *Sprint*, the Court used state-initiated custody proceedings in its analysis[19] as an example of civil proceedings which are akin to criminal proceedings. 134 S. Ct. at 592 (citing *Moore v. Sims*, 442 U.S. 415, 419–420 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents)). *See also Davis v. Baldwin*, 594 F. App'x 49, 51 (2d Cir. 2015) (same).

"If the federal court action falls into one of the three categories listed above, the court may then consider additional factors, such as "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." *Torres v. Gaines*, 130 F. Supp. 3d 630, 636 (D. Conn. 2015).  In

---

[19] *Sprint* did not involve custody proceedings.

Judge D'Agostino's decision, she stated that "several courts in the Circuit have held that *Younger* abstention applies in similar circumstances as this case." (Dkt. No. 9 at 5) (citing *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding)).

In *Graham*, the court stated that "'there can be no doubt that a custody dispute . . . raises important state interests.'" 2015 WL 1120121, at *3 (quoting *Reinhardt v. Com. of Mass. Dep't of Social Servs.*, 715 F. Supp. 1253, 1256 (S.D.N.Y.1989)).  In addition, the court held that plaintiff was able to raise any potential constitutional claims in state court. *Id.*  Therefore, the court applied *Younger* to dismiss plaintiff's claims for injunctive relief.  The same is true in this action to the extent that any of the issues upon which plaintiffs base their action are still pending or are to be tried in the future.[20] In fact, plaintiff Amato has cited a quote from a letter, signed by Judge McGinty, telling plaintiff Amato that, if she is unhappy with the court's decision, her recourse is an appeal of that decision.[21] (Compl. ¶ 41).

## VII.  <u>Opportunity to Amend</u>

### A.    <u>Legal Standards</u>

Generally, when the court dismisses a pro se complaint *sua sponte*, the court

---

[20] *Younger* does not apply to monetary damages, thus, the dismissal of plaintiff's damage claims would be governed by the domestic relations exception and not *Younger*.

[21]  The letter is referring to a "decision" from 2016.  It is unclear what that decision may have been or whether it was the judge's actual custody decision.

should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B.    Application

Because Judge McGinty and Attorney Ingram are entitled to absolute immunity, it would be futile to allow the plaintiffs to amend their complaint. No amendment will cure this deficiency. Defendant Gilday does not act under color of state law, and plaintiffs have made no sufficient allegations of a conspiracy with Judge McGinty that would be sufficient to establish state action by defendant Gilday. Thus, the court also recommends that no amendment be allowed. Defendants Bessmer and Augustine also do not act under color of state law, and defendant Bessmer is simply plaintiff Amato's adversary in the custody dispute. Defendant Augustine does not appear to be involved in the litigation at all. Thus, no amendment would change this court's recommendation with respect to defendants Bessmer and Augustine.

The court notes that, as stated above, in two of the paragraphs of her complaint, plaintiff appears to state that New York Domestic Relations Law §§ 236 and 240 are "unconstitutional," but her reasoning for this allegations is completely unclear. (Compl. ¶ 36). While plaintiff Amato might in certain circumstances be entitled to challenge the constitutionality of laws as they applied to her without running afoul of the domestic relations exception, *Younger*, or *Rooker Feldman*, the other plaintiff's do not have

standing to assert this claim because the laws have not been applied to them, and plaintiff Amato has not named any defendants that would be able to afford her the relief that she seeks with respect to the sections of the law that she appears to challenge.  In addition, it is likely that even a proper challenge to the statute would have to be brought first in state court. *See Kahn, supra*.  The court also points out that this claim does not appear in plaintiff's "relief" section.  Thus, the court will recommend dismissing this claim without prejudice to filing an amended complaint with only plaintiff Amato as the plaintiff, against the proper defendant, at the proper time, and in the appropriate forum.[22]

## VIII.  **Motion to Obtain ECF Login and Password**

Because this court is recommending dismissal at this time, the court will deny plaintiff's motion to obtain ECF privileges without prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiffs' complaint be dismissed in its entirety **WITH PREJUDICE** as against defendants McGinty, Ingram, Gilday, Bessmer, and Augustine, and it is

**RECOMMENDED**, that plaintiff Amato's complaint be dismissed **WITHOUT PREJUDICE** only with respect to any claim challenging the constitutionality of New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such challenge, and in the proper forum, as discussed above, and it is

---

[22] Although plaintiff also mentions the Family Court Act in paragraph 36 of her complaint, she does not indicate which sections of the Act she believes to be unconstitutional.

**ORDERED**, that plaintiff Amato's motion to obtain ECF privileges (Dkt. No. 10) is **DENIED**, and it is

**ORDERED**, that the Clerk serve a copy of this order on plaintiffs to the extent that addresses are available.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 6, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge

27